## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**Dawn M. Casey**<br><br>Debtor. | Chapter 7<br><br>Case No. 11-12394 (BLS) |
| **Robert Napert and Beatriz Valdes,**<br><br>Plaintiffs,<br><br>v.<br><br>**Dawn M. Casey,**<br><br>Defendant. | Adv. No. 12-50411<br><br>Related to Adv. Docket<br>Nos. 1, 5, 12, & 13 |

GERRY GRAY, P.A.          THE EABY FIRM, LLC
Gerry Gray, Esq.          Bradley S. Eaby, Esq.
21133 Sterling Avenue     99 Wolf Creek Boulevard
Suite 12                  Suite 3
Georgetown, DE 19947      Dover, DE 19901

Counsel for Plaintiffs    Counsel for Defendant

## MEMORANDUM OPINION[1]

On March 7, 2012, Robert Napert and Beatriz Valdes ("Plaintiffs") filed an adversary complaint (the "Complaint") [Adv. Docket No. 1] seeking, *inter alia*, a determination that the debt owed to them is nondischargeable pursuant to section 523(a)(2)(A), or dismissal

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7052, 9014(c).

of Defendant's bankruptcy case under section 727(b) of the Bankruptcy Code on grounds of abuse or bad faith. 11 U.S.C. §§ 523(a)(2)(A), 727(b). For the reasons set forth below, the relief requested by Plaintiffs will be denied and the debt will be deemed dischargeable.

## I. BACKGROUND

On July 10, 2011, John J. Casey and Dawn M. Casey ("Mrs. Casey" or "Defendant," and together with John J. Casey, "Debtors") entered into a contract with Plaintiffs to purchase a 1972 Graywood mobile home, located at 35524 Pine Drive, Mariner's Cove Mobile Home Community, Millsboro, Delaware (the "Property"). Mrs. Casey testified at trial that she and her husband were interested in the Property because they were facing foreclosure of their home, and that they had met with a bankruptcy attorney in or around May 2011. [Trial record at 1:20, electronic recording on file with the Court]. In accordance with the terms of the sale agreement, Mrs. Casey signed a promissory note in the amount of $57,600 in exchange for title to the Property, and the transaction was memorialized in a bill of sale (collectively, the "Sale Documents"). [Adv. Docket No. 1, Exs. 1, 2, & 3]. The undisputed facts indicate that at the time of the transaction, Debtors had sufficient income to service the debt, and that none of the Sale Documents grants a security interest in the Property for the benefit of Plaintiffs.[2]

---

[2] In an attempt to remedy Plaintiffs' lack of a security interest in the Property, Ms. Valdes repeatedly contacted Mrs. Casey after the petition date, asking that Mrs. Casey sign a new promissory note. [Trial record at 1:45]. After repeated requests, Mrs. Casey capitulated and, without first contacting her attorney, signed the Replacement Note. [Adv. Docket No. 1, Ex. 7]. Mrs. Casey stated that although the document is dated December 1, 2011, she signed the Replacement Note in late October or early November 2011 (in any event, well after the commencement of her Chapter 13 case). [Trial record at 1:44]. Mrs. Casey later informed her attorney, Mr. Bradley, of these events, prompting him to send a cease and desist letter to Plaintiffs. [Letter from Mr. Eaby, Esq., to Mr. Napert, Nov. 30, 2011; Adv. Docket No. 1, Ex. 8].

On July 29, 2011, Debtors commenced their Chapter 13 case. [Main Docket No. 1]. Debtors' Schedule B listed Plaintiffs as holders of an unsecured claim in the amount of $20,000. [Main Docket No. 1]. Mrs. Casey testified at trial that the $20,000 claim reflected the actual cash value of the Property per their insurance policy, rather than the purchase price. [Trial record at 1:37; Joint Trial Exhibit 8]. Debtors intended to keep the Property and budgeted for monthly rent payments of $1251 in their Plan, which sum included the lot rent payable to Mariners' Cove as well as the payment to Plaintiffs for the Property. [Main Docket No. 1, Schedule J].

On August 18, 2011, John J. Casey was arrested and subsequently convicted on federal charges. [Joint Trial Exhibit No. 13; Trial record at 1:43]. Unable to proceed with their Chapter 13 plan as a result of John Casey's incarceration, the Debtors' case was converted to Chapter 7 on September 9, 2011. [Main Docket No. 17]. As John Casey had obtained a Chapter 7 discharge in 2004, he was ineligible for relief under Chapter 7 pursuant to section 727(a)(8), and he was dismissed from the case on November 8, 2011. 11 U.S.C. § 727(a)(8). [Main Docket No. 31]. Accordingly, Mrs. Casey is the sole Debtor and Defendant in this proceeding.

Plaintiffs have commenced this action seeking to deny Mrs. Casey a discharge with respect to Plaintiffs' claim, or to dismiss Mrs. Casey's case pursuant to section 707(b) of the Bankruptcy Code. 11 U.S.C. § 707(b). On April 9, 2012, Mrs. Casey filed a Motion to Dismiss the Complaint. [Adv. Docket No. 5]. This Court ruled on the Motion to Dismiss by letter, dated January 14, 2013, and entered an Order the same day dismissing four of the six counts of the Complaint. [Adv. Docket Nos. 12 & 13]. A trial on the two remaining counts was held on October 17, 2013.

## II. JURISDICTION & VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), and 1334(b). Venue is proper pursuant to 28 U.S.C.

§§ 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (I), and (O).

### III. LEGAL ANALYSIS

Two counts of Plaintiffs' complaint remain before the Court.[3] First, Plaintiffs allege that Mrs. Casey's bankruptcy case should be dismissed under section 707(b) on the ground that the Defendant filed her case in bad faith. 11 U.S.C. § 707(b). Second, Plaintiffs request that the unsecured debt arising from the sale of the Property be deemed nondischargeable pursuant to section 523(a)(2)(A). 11 U.S.C. § 523(a)(2)(A). As set forth below, the Court declines to grant the requested relief and holds that the case was commenced in good faith and the debt owing to Plaintiffs is dischargeable.

### A. Section 707(b) Dismissal

The first count before the Court is that the case should be dismissed pursuant to section 707(b) for bad faith or abuse. Section 707(b) provides that a bankruptcy case may be dismissed "if the court finds that granting the relief requested – a discharge – would be an abuse of chapter 7." 6 *Collier on Bankruptcy* ¶ 707.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Plaintiffs allege that the Defendant intentionally undervalued the Property on Schedule B and that such a misrepresentation constitutes bad faith and an abuse of the Bankruptcy Code under section 707(b). This issue arises because Debtors reported the Property's value as $20,000 on Schedule B, but they had purchased the Property for $57,600 a few weeks earlier.

The Court finds that the $20,000 value on Schedule B corresponds to the actual cash value as stated on Debtors' insurance policy and that Debtors did not intentionally undervalue the Property.[4]

---

[3] Counts I (section 523(a)(2)(A)) and VI (section 707(b)).
[4] The Court notes that at the time of filing, Delaware law allowed a homestead exemption of $100,000. 10 Del. Code Ann. § 4914(c)(1). Thus regardless of whether the Property had been listed at $57,600 or $20,000, it would have been fully exempt.

In its letter to the parties dated January 14, 2013, this Court noted that while Plaintiffs' section 707(b) claim was sufficient to withstand a motion to dismiss, "the record here does indicate that these Debtors legitimately required bankruptcy relief and protection at the time of filing, and so it may be a significant challenge for the Plaintiffs to obtain the extraordinary remedy of dismissal under 11 U.S.C. § 707(b)." Letter Ruling Regarding Debtors' Motion to Dismiss, at 2 n.1 (Jan. 14, 2013) [Adv. Docket No. 12]. Plaintiffs did not seriously contest at trial the legitimacy of Debtors' filing, and the record on this issue remains largely the same. The Court finds that Debtors filed for bankruptcy relief in good faith and that Debtors did not misrepresent the value of the Property. Plaintiffs' request for dismissal pursuant to section 707(b) is denied.

## B. Nondischargeability Under Section 523(a)(2)(A)

In the second count before the Court, Plaintiffs seek to except their claim from discharge pursuant to section 523(a)(2)(A), as a debt obtained under "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). In support of their nondischargeability claim, Plaintiffs point to the timing of Debtors' bankruptcy filing and John Casey's subsequent arrest, the fact that Debtors had consulted with a bankruptcy attorney several weeks prior to purchasing the Property, and the difference between the purchase price of the Property and the value listed on Debtors' schedules. Plaintiffs have also argued that the October 11 replacement promissory note (the "Replacement Note") constitutes a valid and enforceable security agreement. The Court addresses each of Plaintiffs' points in turn.

Case law teaches that the statutory exceptions to discharge are to be narrowly construed because "[t]he overriding purpose of the Bankruptcy Code is to relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start." *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995). The burden lies upon the objecting creditor to prove by a preponderance of the evidence that the elements of an exception to discharge have been met. *Grogan v. Garner*, 498 U.S. 279,

287-88 (1991). Section 523(a)(2)(A) provides that a debt may be held non-dischargeable if it was obtained under "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). A party seeking a determination of non-dischargeability pursuant to section 523(a)(2)(A) must prove that:

1. The debtor made the misrepresentations or perpetuated fraud;
2. the debtor knew at the time that the representations were false;
3. the debtor made the misrepresentations with the intention and purpose of deceiving the creditor;
4. the creditor [justifiably] relied on such misrepresentations; and,
5. the creditor sustained loss and damages as a proximate result of the misrepresentations having been made.

*In re Giarratano*, 299 B.R. 328, 334 (Bankr. D. Del. 2003) (citing *Field v. Mans*, 516 U.S. 59, 70–71 (1995)), *aff'd*, 358 B.R. 106 (D. Del. 2004).

Plaintiffs rely heavily on the undisputed facts that (i) Debtors had consulted with an attorney months before purchasing the Property and (ii) Mr. Casey was arrested shortly after the purchase to prove that Debtors had no intention of paying the debt. To begin with, the Court rejects the proposition that consulting with a bankruptcy attorney equates intent not to pay one's debts. Next, with respect to the issue of disclosure, the Court heard conflicting testimony at trial about whether or not Debtors disclosed to Plaintiffs that they had met with a bankruptcy attorney months before their dealings with Plaintiffs. "A 'failure to disclose can amount to misrepresentation. A condition to invocation of the doctrine, however, is that there be a duty to make disclosure.'" *In re Bones*, 395 B.R. 407, 429 (Bankr. E.D. Mich. 2008) (quoting *Rowe v. Steinberg (In re Steinberg)*, 270 B.R. 831, 835 (Bankr. E.D. Mich. 2001)). A survey of the case law reveals no affirmative duty to disclose contemplation of filing bankruptcy, absent fraud or fraudulent inducement. *See e.g., In re Dimmitt*, 132 B.R. 617 (Bankr. W.D. Mo. 1991)

(holding that filing a bankruptcy petition eight months after debtor and spouse entered into a separation agreement was insufficient to warrant a finding that the separation agreement was procured by fraud, where there was evidence that the debtor made a good-faith attempt to comply with the terms of the separation agreement). While the timing of Debtors' bankruptcy might give rise to an inference of fraudulent intent, any such inference is dispelled by the undisputed facts of this case. It is uncontested that at the time of the agreement, Debtors had sufficient funds and fully intended to pay the debt. Debtors were also unaware at that time of John Casey's impending arrest and incarceration; this is relevant because it was only after John Casey's unexpected arrest and incarceration that the case was converted to Chapter 7, as Mrs. Casey was unable to make the Chapter 13 plan payments without her husband's income. In short, had John Casey not been arrested, it is fair to assume that Debtors would have continued making monthly payments to Plaintiffs in accordance with their Chapter 13 plan, and this action would not be before the Court. After considering carefully the record and papers, the Court is satisfied that Mrs. Casey entered into the agreement in good faith, with no intention of deceiving Plaintiffs.

Second, Plaintiffs' argument that the difference between the purchase price and the amount of their claim (*i.e.*, the Schedule B value) is significant remains unpersuasive, for the reasons stated in Part A, above. In short, the stated value on Schedule B was a legitimate statement of the Property's insured value, and the discrepancy between the purchase price of the Property and the Schedule B value does not constitute an incident of fraud or a misrepresentation. Moreover, this discrepancy in value is immaterial because the higher figure would also have been covered under Delaware's homestead exemption. 10 Del. Code Ann. § 4914(c)(1).[5]

Finally, Plaintiffs contend that the Replacement Note is a valid and enforceable security agreement. The Court disagrees. First, Plaintiffs' post-petition request that Debtor execute the Replacement

---

[5] See note 4, *supra*.

Note appears to be a violation of the automatic stay. 11 U.S.C. § 362(a). Second, the Court does not accept the proposition that by the Replacement Note the Debtor effectively granted a lien on previously unencumbered property of the estate, on a post-petition basis without leave of Court. Finally, to the extent that the Replacement Note may be analogized to a reaffirmation agreement, it must fail due to the absence of mandatory statutory predicates for reaffirmation of a debt. As explained by a leading bankruptcy treatise:

> [A] reaffirmation agreement is not enforceable unless the debtor received the disclosures described in section 524(k), at or before the time the debtor signed the reaffirmation agreement. Section 524(k)(2) requires the disclosures to be made clearly and conspicuously and in writing….According to section 524(k)(1), the disclosures consist of a combination of the disclosure statement described in section 524(k)(3), completed as required by that paragraph, and the agreement, statement, declaration, motion and order described in section 524(k)(4)-(8). Thus, unless all of these documents conform to the statutory requirements, the disclosures required by section 524(c)(2) have not been given.

4 *Collier on Bankruptcy* ¶ 524.04[1].[6] Leaving aside the potential stay violation, Mrs. Casey received none of the requisite disclosures for a reaffirmation agreement. The Court finds that the Replacement Note is void and unenforceable; thus, Plaintiffs remain holders of an unsecured claim.

In sum, Plaintiffs have not established the elements required under section 523(a)(2)(A), and their request to except their claim from discharge is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have not met their burden of proof under sections 707(b) and 523(a)(2)(A). Therefore, the debt owed by Defendant to Plaintiffs is determined to be

---

[6] See also Mr. Eaby's cease and desist letter, *supra* note 2.

dischargeable; judgment is entered in favor of Defendant as to Counts I and VI of Plaintiffs' Complaint; and the discharge shall issue forthwith. An appropriate Order follows.

**BY THE COURT**:

Dated: December 10, 2013
Wilmington, Delaware

Brendan Linehan Shannon
United States Bankruptcy Judge